IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

KENNETH McGHEE,

    Plaintiff,

v.                                           CASE NO. 5:10-cv-279-RS-EMT

HEALTHCARE SERVICES GROUP,
INC., SOVEREIGN HEALTHCARE
OF BONIFAY LLC d/b/a BONIFAY
NURSING AND REHAB CENTER, and
NANCY HALL,

    Defendants.
_____/

## ORDER

Before me are Defendants' motions for summary judgment (Docs. 67 & 69) and Plaintiff's responses (Docs. 83 & 85).

## I. STANDARD OF REVIEW

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512 (1986). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in

the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)). However, a mere 'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 251).

## II. BACKGROUND

I accept the facts in the light most favorable to Plaintiff. *See Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008) (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1343 n.1 (11th Cir. 2002)). " 'All reasonable doubts about the facts should be resolved in favor of the non-movant.' " *Id.* (quoting *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999); *Clemons v. Dougherty County*, 684 F.2d 1365, 1368-69 (11th Cir. 1982).

Plaintiff was hired as an account manager with Defendant Healthcare Services Group, Inc. ("Healthcare") around November 2008 by Bill Simpkins. Healthcare was contracted by Defendant Sovereign Healthcare of Bonifay, LLC, a

nursing and rehab facility ("Sovereign"), to maintain its laundry and housekeeping. Healthcare was responsible for the "hiring, firing, discipline, wages, benefits and tax withholdings" of the laundry and housekeeping employees at Sovereign. (Doc. 67, p. 3). As Account Manager, Plaintiff had the duty to oversee the cleanliness of Sovereign and supervised approximately eighteen employees.

Defendant Nancy Hall was the Administrator for Sovereign and was responsible for overseeing the facility's maintenance. Hall was not involved in human resources or personnel decisions at Healthcare and "never had the authority to hire, promote, demote, or terminate Plaintiff or any other employee of Healthcare." (Doc. 69, p. 5).

Around February 24, 2009, Plaintiff's wife, Wendy McGhee, attempted suicide while she was employed as the Director of Admissions and Marketing for Defendant Sovereign. After her suicide attempt, Mrs. McGhee took medical leave and returned to work around March 16, 2009. She was terminated on or about April 21, 2009. After her termination, Mrs. McGhee filed a discrimination claim.

Plaintiff asserts that Defendants Sovereign and Hall retaliated against him after his wife filed the discrimination claim. According to Plaintiff, Hall contacted Mr. Simpkins and told him she wanted Plaintiff fired and "began demanding that Plaintiff's superiors evaluate Plaintiff's work at the Bonifay facility to try and establish deficiencies in Plaintiff's performance." (Doc. 1, p. 4). Plaintiff was

eventually terminated around September 18, 2009, by Tammy Stephenson, Plaintiff's supervisor.

Mr. Simpkins supports Plaintiff's allegations; however, Ms. Stephenson and Mr. Banyansky, Healthcare's Regional Manager, contend that they were never approached by Hall about terminating Plaintiff. Ms. Stephenson testified that "Plaintiff never completed projects as directed. She repeatedly counseled Plaintiff, he would apologize and make promises, but did not improve his performance." (Doc. 69, p. 5). Mr. Banyanksy was unsatisfied with Plaintiff's performance, stating some deficiencies such as "systems not being followed, not doing inspections on his staff, not following up on projects that need to be done, and just a bunch of excuses." (*Id.*).

In response to his termination, Plaintiff filed a four-count complaint alleging two alternative counts of tortious interference with a business relationship, retaliation by Defendant Sovereign, and retaliation by Defendant Healthcare.

### III. ANALYSIS

#### Counts One & Two

Counts One and Two allege that Sovereign, through Hall, tortiously interfered with the business relationship between Plaintiff and Healthcare. Count One alleges that the interference occurred within the scope of her employment, and Count Two alleges that it occurred outside the scope of her employment. To

4

successfully prove Defendant tortiously interfered with a business relationship, Plaintiff must prove: (1) the existence of a business relationship, (2) Hall's knowledge of the relationship, (3) Hall's intentional and unjustified interference with the relationship, and (4) damages as a result of the interference. *Castelli v. Select Auto Management, Inc.*, 63 So.3d 52, 53 (Fla. 2d Dist. Ct. App. 2011).

Prongs one, two, and four are clearly met; therefore, the issue is whether Hall interfered with Plaintiff's employment and if so, whether the interference was intentional and unjustified. "A third party interferes with a contract or business relationship by influencing, inducing or coercing one of the parties to the relationship to abandon the relationship or breach the contract, thereby causing injury to the other party." *West v. Troelstrup*, 367 So.2d 253, 255 (Fla. 1st Dist. Ct. App. 1979). There are conflicting witness accounts of Hall's requests and involvement in Plaintiff's termination from Mr. Simpkins, Mr. Banyansky, and Ms. Stephenson. Therefore, a genuine issue of material fact exists as to the intentional and unjustified interference by Sovereign through the acts of Hall.

## Counts Three & Four

Counts Three and Four are against Sovereign and Healthcare for retaliation after Plaintiff's wife filed a discrimination claim against it. Plaintiff claims he is entitled to Title VII protection because of the familial association with his wife. To establish a case for retaliation under Title VII, Plaintiff must show (1) that he

engaged in statutorily protected conduct, (2) that he suffered an adverse employment action, and (3) that there is a causal link between the conduct and the action. *Howard v. Walgreen, Co.,* 605 F.3d 1239, 1244 (11th Cir. 2010). Previously, there was a split in the circuits on third-party association claims, and the issue had yet to be addressed by the Eleventh Circuit. However, the Supreme Court recently addressed this issue in *Thompson v. North American Stainless,* 131 S.Ct. 863 (2011). In *Thompson*, the Supreme Court rejected a categorical rule that third-party associations do not violate Title VII and held that an employer's alleged act of firing an employee in retaliation because that employee's fiancée who engaged in protected activity, if proven, constituted unlawful retaliation. *Thompson*, at 867-68.

Defendants contend that Thompson is not applicable to this case because Plaintiff was employed by Healthcare and his wife was employed by Sovereign. In the Order denying Defendants' Motion to Dismiss (Doc. 26), this Court concluded that:

> Although Plaintiff and his wife were employed by different entities, *Thompson* gives no indication that this prohibits recovery. Plaintiff's employer was a subcontractor of Bonifay, and Plaintiff's physical workplace was at the Bonifay facility. The two employers and their employees are clearly intertwined, and under Plaintiff's version of the facts Bonifay used its relationship with Healthcare to retaliate against Plaintiff's wife for her protected activity. Allowing employers to induce their subcontractors to fire the subcontractor's employees in retaliation for the protected activity of a spouse would clearly contravene the purpose of Title VII. It is easy to conclude that a reasonable worker might be dissuaded from engaging in

6

protected activity if she knew that her husband would be fired by his employer. *See Thompson,* at 868. Therefore, under the test set forth in *Thompson* Plaintiff's interests fall within the "zone of interests" of those intended to be protected by Title VII.

(Doc. 26). Standing by that conclusion, Defendants' argument that *Thompson* does not apply in this case fails.

Healthcare argues that even if Plaintiff can meet the *prima facie* case for retaliation, Healthcare terminated Plaintiff for legitimate non-retaliatory reasons. Healthcare claims that Plaintiff was not meeting his job requirements; however, Mr. Simpkins deposition testimony stated that "And [Hall] brought me into her office, and she told me that she didn't care what it took, that she want [sic] [Plaintiff] fired. And I told her that I could not do that. That in my opinion [Plaintiff] was doing a good job and that I could just not walk out in the hall and fire him." (Doc. 88, #3, p. 12). Therefore, a genuine issue of material fact exists whether Plaintiff was meeting his job requirements or was fired for legitimate reasons.

## IV. CONCLUSION

Defendants' Motions for Summary Judgment (Docs. 67 & 69) are **DENIED**.

**ORDERED** on November 2, 2011.

>
> **/s/ Richard Smoak**
> **RICHARD SMOAK**
> **UNITED STATES DISTRICT JUDGE**

7